

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.   Criminal No. **3:22CR08**

**HEATHER A. HUFFMAN,**

Petitioner.

## MEMORANDUM OPINION

Heather A. Huffman, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 motion to vacate, set aside, or correct her sentence. ("§ 2255 Motion," ECF No. 176.) In her § 2255 Motion, Huffman contends that she is entitled to relief on the following grounds:[1]

| | |
|---|---|
| Claim One: | "Ineffective assistance of counsel by failing to adequately investigate the merits of my case by failure to argue US vs. Banks, US vs. McKinney, and US vs. Kennert. These cases refer to differences between intended loss, actual loss, and amount of restitution as all three of these are different amounts." (*Id.* at 5.) |
| Claim Two: | "Ineffective assistance of counsel by failure to present an adequate adversarial challenge- no rebuttals to Government's objection to psychologist's report and no objections which could have mitigated my sentence." (*Id.* at 6.) |
| Claim Three: | (a) "Judicial prejudicial bias" (*id.* at 8); and, <br> (b) "Ineffective assistance of counsel that attorney failed to object to prejudicially biased condition of confinement where Court ordered separation of mother and daughter violating 8th Amendment cruel and unusual punishment clause, 14th Amendment equal protection, and 5th Amendment due process clause of U.S. Constitution, creating a sentence disparity between Ms. Huffman and other mother with children fraud conspiracy defendants who were not forcibly separated from their daughters." (*Id.* at 8.) |
| Claim Four: | "Ineffective assistance of counsel to make adequate motions and failure to object 1 pt for a dismissed case in sentencing guidelines calculations." (*Id.* at 9.) |

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling in quotations from the parties' submissions.

The government has moved to deny Huffman's motion. Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and an extension of time, Huffman has filed no reply. Accordingly, the § 2255 Motion (ECF No. 176) will be DENIED.

## I.    PROCEDURAL HISTORY

### A.    Indictment and Guilty Plea

On January 18, 2022, the grand jury charged Huffman and her co-conspirators in a sixteen-count indictment stemming from stealing expanded unemployment benefits provided in response to the COVID-19 pandemic. (ECF No. 1.) Specifically, Huffman was charged with conspiracy to commit mail and wire fraud (Count 1), major disaster fraud (Counts 2, 4–6), aggravated identity theft (Counts 7–9), mail fraud (Counts 11–12), and wire fraud (Counts 13, 14, 16). (*Id.* at 1.) On July 26, 2022, Huffman entered into a plea agreement in which she agreed to plead guilty to Count 1 and Count 7. (ECF No. 61 ¶ 1.) Huffman agreed that she understood that she could receive a maximum sentence of thirty years for Count 1 and a mandatory term of imprisonment of two years to be served consecutively with any other term of imprisonment imposed for Count 7. (*Id.*)

On February 18, 2022, Huffman was placed on pretrial release. (ECF No. 157 ¶ 10.) Huffman's sentencing hearing was scheduled for November 29, 2022. Instead of appearing for her sentencing, she absconded from supervision. (*Id.*) Huffman remained a fugitive until she was arrested in Kansas on March 4, 2023, after assuming another person's identity. (*Id.* ¶¶ 11.)

### B.    Presentence Report and Objections

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. (ECF No. 76.) The PSR found the total loss amount to be $3,550,166.20. (*Id.* ¶ 18.) This amount included 137 false unemployment insurance claims that were approved and 86 that were applied for but were denied. (*Id.*) The PSR also outlined that Huffman and her co-conspirators unlawfully used the identifications of 128 individuals. (*Id.* ¶ 19.) Huffman's Base Offense Level was 7. (*Id.*

2

¶ 37.) Because the amount of loss was more than $3,500,000 but less than $9,500,000, her offense level was increased by 18. (*Id.* ¶ 38.) Huffman received a two-level increase because the offense involved more than ten victims, a two-level increase because the offense involved sophisticated means, and another a two-level increase because the fraud was in connection with major disaster or emergency benefits. (*Id.* ¶¶ 39–41.) Huffman received another four-level increase due to her role in the offense as a leader or organizer. (*Id.* ¶ 43.) Before Huffman absconded, she received a three-level reduction for acceptance of responsibility, making her Total Offense Level 32 prior to sentencing. (*Id.* ¶¶ 57–59.)

After Huffman absconded, the probation officer amended the PSR and added a two-level increase for obstruction of justice. (ECF No. 153 ¶¶ 35, 45.) Huffman also lost the benefit of the three-level reduction for acceptance of responsibility based on her "failure to appear for sentencing and the evasive actions she took to avoid arrest, which include[d] numerous felony offenses." (*Id.* ¶¶ 36, 58–59.) Huffman's Total Offense Level increased to 37. (*Id.* ¶ 60.)

The probation officer determined that Huffman's criminal history score was one, resulting in a Criminal History Category of I. (*Id.* ¶ 69.) With a Total Offense Level of 37 and a Criminal History Category of I, Huffman's advisory guidelines range for Count 1 was 210 to 262 months of imprisonment, with a mandatory 24-month sentence for Count 7, to be served consecutive to Count 1. (*Id.* ¶ 121.)

Huffman initially filed objections to the PSR, arguing that the two-level enhancement for sophisticated means was not applicable because she did not attempt to conceal the offenses, and that use of a computer and the internet to apply for benefits should not be considered sophisticated. Huffman also objected generally to the guideline range recommended by the PSR as too high. (ECF No. 110, at 10–12.) She further argued that the two-level enhancement for being an organizer of criminal activity "significantly exaggerate[d] her sentencing range," and that the

3

amount of loss was barely eligible for an additional two-level enhancement. (*Id.* at 9.) Counsel also moved for a downward departure because Huffman was the sole caretaker of an underage daughter. (*Id.* at 12–14.)

After Huffman had absconded and an amended PSR was prepared, Huffman also objected to the removal of the three-level acceptance of responsibility. (ECF No. 159, at 12–13.) Counsel asked the Court to downwardly depart from the guidelines to a sentence of between 96 and 120 months because collectively the enhancements overstated the seriousness of her offense. (*Id.* at 1–2.) Counsel also requested that Huffman be sent to the same prison as her daughter who was also her co-conspirator. (*Id.* at 3.)

### C.     Sentencing

During sentencing, Huffman's counsel argued that the sophisticated means enhancement was inappropriate because there was no cover-up and it was "poorly planned" with "almost no chance that this crime would not be discovered at some point." (ECF No. 178, at 6.) Counsel also argued that the obstruction of justice enhancement was appropriate because Huffman fled, but that she should still receive the two-level reduction for acceptance of responsibility because she pled guilty, saved the Government from putting on a complicated trial, never tried to withdraw her plea, and was "instrumental in helping all four [co-conspirators] turn themselves in when the indictment came out." (*Id.* at 10.) The Court rejected that argument and explained that Huffman's "flight, the use of fake names during the flight, all the documents that she forged or created falsely in order to obtain her position in Kansas, just pretty much demonstrate she hasn't really accepted responsibility," and that the obstruction guidelines precluded an acceptance of responsibility reduction. (*Id.* at 11.) The Court also rejected the argument that Huffman failed to use sophisticated means because she stole many identities, created many fake documents, and applied for unemployment benefits in multiple states. (*Id.* at 12.)

4

The Court next addressed Huffman's argument for a departure due to family obligations. (*Id.* at 12–13.) Huffman's counsel noted that he wished to modify the argument to seek a variance instead, and the Court noted that it would have denied a departure anyhow. (*Id.* at 13.) Counsel argued that a sentence in the range of 10 to 12 years total would be appropriate for someone who had no significant criminal history, was subjected to sexual and domestic violence, and has a master's degree in nursing. (*Id.* at 17–18.) The Court emphasized that Huffman dragged her adult daughter and a friend into the scheme, and later absconded, leaving her underage daughter behind when she fled. (*Id.* at 19–20; *see id.* at 25–26.) The Court further addressed the psychologist's report and noted that the doctor was "also cautious not to say it was depression, or any other psychiatric illness" that led to the criminal conduct or Huffman's later flight before sentencing. (*Id.* at 26–28.) Ultimately, the Court denied the variance requested by counsel. (*Id.* at 43.)

After the government stated its position, counsel asked the Court "to recommend for however long she is sentenced she be sent if possible to FMC Alderson." (*Id.* at 29.) The Court then asked:

> THE COURT: So you do not request that she be placed the same place as her daughter?
>
> MR. BELILES: No, I am requesting she be at the same place.
>
> THE COURT: That is just not going to happen. Because that is like, you know, those two got in a peck of trouble the last time they were with each other. I am just not going to do that again. Because Ms. Huffman will lead her daughter by the nose down the wrong road seven days a week. So that is – don't worry about that happening.

(*Id.* at 29–30.) After listening to Huffman's statement, the Court explained that it believed "that this [is] a case that calls for serious punishment." (*Id.* at 41.) The Court sentenced Huffman to 192 months on Count 1 and the mandatory 24 months on Count 7 to be served consecutively. (*Id.* at 44.)

Huffman filed no appeal. On September 24, 2024, the Court received Huffman's § 2255 Motion.

## II.    ANALYSIS

### A.    Claim Three (a) is Barred from Review

In Claim Three (a), Huffman argues that the Court exhibited "Judicial prejudicial bias" (ECF No. 176, at 8), when it failed to order the Bureau of Prisons to house her in the same institution as her adult daughter who was also her co-conspirator. As the government correctly points out, the procedural default rule bars Claim Three (a) from review here, absent a showing of cause and prejudice or actual innocence, because Huffman could have raised, but failed to raise, this claim on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (explaining that a petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal" (citation omitted) (internal quotation marks omitted)). Huffman fails to show that cause and prejudice exist, much less that she is actually innocent of any of the crimes for which she was convicted.[2] Accordingly, Claim Three (a) will be DISMISSED.

### B.    Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable

---

[2] Moreover, Huffman offers no persuasive argument that would show the Court was biased in its refusal to recommend that she be housed in the same facility as her daughter.

professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claim One, Huffman contends, in sum: "Ineffective assistance of counsel by failing to adequately investigate the merits of my case by failure to argue US vs. Banks, US vs. McKinney, and US vs. Kennert. These cases refer to differences between intended loss, actual loss, and amount of restitution as all three of these are different amounts." (ECF No. 176, at 5.) Huffman fails to adequately identify what counsel should have argued about these cases or how it would have applied to "the merits of [her] case." (*Id.*) For that reason alone, Huffman fails to identify any deficiency of counsel or resulting prejudice and Claim One may be DISMISSED.

The government generously volunteers that these cited cases are *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022), and *United States v. McKinney*, 645 F. Supp. 3d 709, 712 (E.D. Mich. 2022).[3] (ECF No. 179, at 7.) The government explains that, in these cases, the court "excluded intended losses as part of the fraud loss under U.S.S.G. § 2B1.1." (*Id.* (citation omitted).) However, the government also points out that none of these cases are from the Fourth Circuit and there is no in-circuit precedent that supports excluding intended losses as part of the § 2B1.1 calculation. (*Id.*) Huffman fails to explain with any detail why counsel was deficient or how she was prejudiced by counsel's failure to make unidentified arguments based on out-of-circuit cases

---

[3] The third case may be *United States v. Kennert*, No. 22-1998, 2023 WL 4977456 (6th Cir. Aug. 3, 2023), an unpublished case from the Sixth Circuit.

7

about what should be included in a loss calculation. To the extent she suggests that she should have only been held responsible for the actual loss, that argument is unavailing. Huffman was appropriately held accountable for the amount of actual loss and the amount of intended loss reasonably foreseeable to her. *See United States v. Boler*, 115 F.4th 316, 327 (4th Cir. 2024) ("In sum, the structure of the Guidelines supports the conclusion that the meaning of 'loss' is broad enough to encompass intended loss."). Accordingly, counsel reasonably eschewed making that argument. Instead, counsel advanced arguments that the loss amount barely qualified for the higher range, and that the Court should consider the lower range, an argument that was eminently reasonable, although ultimately not persuasive. Huffman fails to demonstrate any deficiency of counsel or resulting prejudice. Claim One will be DISMISSED.

In Claim Two, Huffman contends that "[i]neffective assistance of counsel by failure to present an adequate adversarial challenge- no rebuttals to Government's objection to psychologist's report and no objections which could have mitigated my sentence." (ECF No. 176, at 6.) As the government correctly points out, it lodged no objection to the psychologist's report. (ECF No. 179, at 8.) Therefore, the Court fails to discern how counsel could have rebutted an objection that was not made. Moreover, Huffman fails to identify any argument that counsel could have made based on the psychologist's report that would have persuaded the Court to grant her a lower sentence. The Court had reviewed the report and indicated that it had spoken to the doctor who evaluated Huffman. Once again, Huffman fails to identify any deficiency of counsel or resulting prejudice and Claim Two will be DISMISSED.

In Claim Three (b), Huffman faults counsel based on the following:

> Ineffective assistance of counsel that attorney failed to object to prejudicially biased condition of confinement where Court ordered separation of mother and daughter violating 8th Amendment cruel and unusual punishment clause, 14th Amendment equal protection, and 5th Amendment due process clause of U.S. Constitution, creating a sentence disparity between Ms. Huffman and other mother['s] with

8

children fraud conspiracy defendants who were not forcibly separated from their daughters.

(ECF No. 176, at 8.) Contrary to Huffman's suggestion, counsel specifically asked the Court to consider recommending that she be incarcerated in the same prison as her adult daughter. As explained previously, the Court emphatically denied that request because Huffman had previously roped her daughter into criminal behavior that resulted in her incarceration. The Court fails to discern, and Huffman fails to advance, any argument that counsel could have made that would have persuaded the Court to consider this request. Counsel cannot be faulted for failing to make a futile argument. In sum, Huffman identifies no deficiency of counsel and no resulting prejudice. Accordingly, Claim Three (b) will be DISMISSED.

Finally, in Claim Four, Huffman argues that "[i]neffective assistance of counsel to make adequate motions and failure to object 1 pt for a dismissed case in sentencing guidelines calculations." (*Id.* at 9.) As a preliminary matter, counsel filed several motions for downward departure and motions for a variance. Although counsel was not successful in obtaining Huffman a sentence between ten and twelve years, the Court heard the arguments and sentenced Huffman below the advisory guidelines range. Thus, Huffman fails to identify any deficiency of counsel or resulting prejudice.

With respect to a failure to object to one point in her criminal history, counsel reasonably eschewed advancing this objection, and Huffman was not prejudiced. Huffman had one criminal history point and that qualified her for a Criminal History Category of I. A lower criminal history category does not exist. Therefore, even if one point was taken away, it would have made no impact on her criminal history category. Counsel cannot be faulted for failing to advance a futile argument. Accordingly, Claim Four lacks merit and will be DISMISSED.

### III. CONCLUSION

The § 2255 Motion (ECF No. 176) will be DENIED. Huffman's claims and the action will be DISMISSED. A certificate of appealability ("COA") will be DENIED.[4]

An appropriate Final Order shall accompany this Memorandum Opinion.

Date: 29 September 2025
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[4] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Huffman has not met this standard.

10